UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ALLAN DAKE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:24-cv-675-GMB |
| FRANK BISIGNANO, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On September 8, 2021, Plaintiff Allan Dake filed an application for a period of disability and disability insurance benefits ("DIB") and an application for supplemental security income ("SSI"). His alleged disability onset date is August 31, 2021. Dake's applications for benefits were denied at the initial administrative level and upon reconsideration. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a telephone hearing on August 8, 2023, and denied Dake's claims on October 4, 2023. Dake requested a review of the ALJ's decision by the Appeals Council, which declined review on April 4, 2024. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of April 4, 2024.

Dake's case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal

Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 12. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence."

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Dake bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. RELEVANT FACTUAL BACKGROUND

Dake was 60 years old on his alleged disability onset date. R. 47. In his disability report, Dake alleged the following medical conditions: chronic obstructive pulmonary disease ("COPD"), lung infection, and back problems. R. 256. He completed the sixth grade[2] and has around 30 years of work experience as a transmission mechanic. R. 257. As a transmission mechanic, he "[p]ull[ed] transmissions out and put them back in." R. 50. Dake is married, and he and his wife had full custody of his three grandchildren at the time of the hearing. R. 47.

At the hearing, Dake testified that his primary complaints are breathing problems, which increased in severity after he was hospitalized for pneumonia in

---

[2] While it does not affect the court's analysis, Dake testified at his hearing that he completed the eighth grade (R. 48) but the evidence in the record suggests he completed no more than the sixth grade. *See* R. 96, 257 & 443.

September 2021. R. 50–52. While in the hospital, a doctor told him he had COPD and needed to quit his job. R. 50–51. To treat his breathing problems, he uses a nebulizer four times per day. R. 53. He ought to use supplemental oxygen, but he cannot afford it. R. 54. Dake testified that he "get[s] winded" from "do[ing] nothing." R. 52.

Dake also complained of knee pain that prevents him from walking for extended periods of time. R. 53. He goes into town weekly, usually to shop for groceries, but he often sits and waits while his wife does the shopping because he "can't stand long or walk around long." R. 55. Dake is unable to stand for longer than 30 minutes to an "hour or so" because he starts to feel a "twist" in his knees. R. 56. During a normal day, he watches television and picks his grandchildren up from school. R. 54, 55.

Dake submitted medical evidence from various sources. He testified that he was admitted to Athens-Limestone Hospital on September 2, 2021, because he had been experiencing chest pains for two days. R. 352–53. After a CT scan and other testing, Dr. Benjamin Favis diagnosed him with pneumonia, chronic obstructive pulmonary disease, and multi cystic lung disease. R. 353–364. Dr. Favis cleared Dake for discharge four days later and instructed him to use home oxygen. R. 353. At a follow-up appointment on September 14, 2021, Dake complained of shortness of breath while performing activities like bathing, dressing, and walking. R. 323.

6

Nurse practitioner April Seay observed that Dake presented a normal gait and a normal respiratory rate but had "decreased breath sounds" and dypsnea, so she referred him to pulmonologist Dr. Albert Sherff. R. 324–323, 396.

A week later, Dr. Scherff conducted pulmonary function testing and concluded that Dake had moderate obstructive ventilatory defect, a mild reduction in diffusion capacity, and normal total lung capacity. R. 396. Dake returned to Dr. Scherff again on October 14 and complained of dry cough, chest tightness, and joint pain. R. 407. Dr. Scherff ordered an x-ray and concluded that Dake's pneumonia and lung airspace had substantially improved since September 2021 even though he was experiencing moderate airflow obstruction. R. 407, 421.

At his next appointment with Dr. Scherff in November 2021, Dake reported that his breathing had worsened and his coughing continued. R. 424. Dr. Scherff noted that Dake's lungs seemed clear on examination, and an x-ray revealed his pneumonia had been resolved. R. 424–25. Dr. Scherff recommended that Dake use a Trelegy inhaler to treat his COPD and referred him to another doctor at UAB for treatment of his cystic lung disease. R. 425. When Dr. Scherff saw Dake again in January 2022, Dake reported that the Trelegy was helping enough that he had "no bad spells since his last visit" but maintained that he still coughs when it is cold outside. R. 438.

On February 3, 2022, Dr. Marlin Gill perfomed a Disability Examination.

R. 443.  At this consultative evaluation, Dake explained that he performs activities like driving, taking out the trash, loading the dishwasher, laundry, grocery shopping, and caring for his personal hygiene. R. 443.  And while he is comfortable at rest, he explained that "walking a short distance makes him very short of breath" and that this "is much worse if he is carrying something." R. 443.  Dake estimated that he can sit for a maximum of one hour, stand for 45 minutes, and walk for 100 yards. R. 443.  On examination, Dr. Gill found that Dake had normal respirations and his lungs were clear. R. 444.

Dake also complained of low back pain for the past 30 years and left knee pain for two years, both of which had never been evaluated by a medical provider. R. 443.  An x-ray revealed mild multilevel degenerative disc disease. R. 444.  Dr. Gill reported that Dake's gait was normal, he could walk without assistance, he had full range of motion in his joints and normal muscle strength, and his back and knees appeared normal with no tenderness. R. 444.  Dake could bend forward 90 degrees normally, he could squat all the way down and return to standing, and he could walk on his toes and heels. R. 444.

Next, Dr. Krishna Reddy completed a Disability Determination Evaluation on February 8, 2022. R. 75–81.  Dake reported his symptoms as pain and shortness of breath. R. 78.  He also listed his daily activities, which included watching television, fishing, hunting, and spending time with others on the phone. R. 78.  He told Dr.

Reddy that he does not know how to cook, he cannot perform yardwork because he becomes short of breath, and he can help with the laundry only while sitting. R. 78. He also reported that he generally cannot walk 100 yards without getting out of breath, he can shop for groceries for about 30 minutes, and he tires more easily while engaging in social activities. R. 78.

After reviewing Dake's medical records, Dr. Reddy offered the opinion that Dake's condition could reasonably be expected to produce some of the claimed symptoms and limitations, but not to the degree he alleges. R. 78. Dr. Reddy concluded that Dake suffered from disorders of the skeletal spine and chronic pulmonary insufficiency, but that these medically determinable impairments are not severe. R. 85. Based on these impairments, Dr. Reddy concluded Dake had some exertional limitations. R. 79. For example, Dake could stand and walk for a total of six hours in an eight-hour workday and he could sit for a total of six hours in an eight-hour workday. R. 79. Additionally, Dake could occasionally lift or carry 50 pounds, and he could frequently lift or carry 25 pounds. R. 79. Dr. Reddy found that Dake should not climb ladders, ropes, and scaffolds and that he should avoid unprotected heights. R. 79–80. As for any environmental limitations, Dr. Reddy noted that Dake should avoid concentrated exposure to pulmonary irritants such as extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation. R. 80.

Later that month, Dake visited UAB for treatment for his lung disease. R 447,

452.  He reported to Dr. Jonathan Kalehoff that he can walk on flat surfaces normally but notices shortness of breath if he walks more than 100 yards while carrying objects or at an incline. R. 447.  A CT scan revealed cysts on his lungs of variable or irregular sizes and "cysts with air-fluid levels suggestive of prior infection" but "no tracking of the cysts towards the airways." R. 451.  A pulmonary function test revealed moderately severe obstructive defect, and Dr. Kalehoff noted that Dake presented bilateral scattered rhonchi on exam. R. 449.  Dr. Kalehoff recommended home and portable oxygen and continued use of an inhaler.  R. 452.

In May 2022, Dake returned to Dr. Scherff for follow up, and he reported that he had not been using the prescribed supplemental oxygen because he could not afford it. R. 462.  He stated that he still used Trelegy but that his breathing was "about the same as before" and he did not "have the breath to do much of anything." R. 462.  Dr. Scherff did not make any changes to Dake's treatment plan. R. 462

Dake underwent another pulmonary function test in August 2022, revealing only a mild obstructive ventilatory defect. R. 496–507.  Dake's physical exam presented rhonchi bases, and he reported stable dypsnea since his last test with Dr. Kalehoff. R. 496, 506.  At a follow up with Dr. Scherff in September 2022, however, Dake reported "a couple of bad spells with breathing, characterized by dizziness and severe dypsnea." R. 513.  Dr. Scherff treated him with prednisone and recommended another visit in six months. R. 514.

10

In December 2022, Dr. Richard Whitney Jr. performed Dake's second Disability Determination Evaluation at the reconsideration level. R. 90–97. Dr. Whitney concluded that Dake's medically determinable impairments included COPD, other disorders of the respiratory system, and disorders of the skeletal spine. R. 94. Like Dr. Reddy, Dr. Whitney found that Dake could walk or stand for six hours of an eight-hour workday and sit for six hours of an eight-hour workday. R. 94. Dr. Whitney also concluded that Dake should avoid concentrated exposure to pulmonary irritants such as extreme cold, fumes, odors, dusts, gases, and poor ventilation, and he should avoid hazards such as machinery or heights. R. 95. Dr. Whitney therefore determined Dake could perform a medium range of work and—like Dr. Reddy—concluded Dake did not qualify as disabled. R. 96, 88.

Finally, in May 2023, Dake returned to Dr. Scherff for his six-month follow-up, when he reported that his breathing was about the same and he still experiences shortness of breath. R. 524. He reported he had been using a nebulizer, which helped, but that he could no longer afford Trelegy even though it was effective in treating his symptoms. R. 524. Dr. Scherff did not note any concerns at this visit, told Dake to continue his current regimen, and recommended a return visit in one year. R. 525.

The ALJ issued his decision on October 4, 2023. R. 34. Under step one of the five-step evaluation process, he found that Dake met the insured status requirements

through December 31, 2026 and had not engaged in substantial gainful activity since his alleged onset date of August 31, 2021. R. 25. The ALJ concluded that Dake suffered from the severe impairments of cystic lung disease, chronic obstructive pulmonary disease, and mild degenerative disc disease of the lumbar spine. R. 26. The ALJ noted that these medically determinable impairments have more than a minimal effect on Dake's ability to perform basic work activities. R. 26. But he concluded at step three of the analysis that none of Dake's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 26–28.

Before proceeding to the fourth step, the ALJ determined that Dake had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). R. 28. The ALJ further found that Dake had the following work limitations:

> [N]o climbing of ladders, ropes, and scaffolds; avoidance of concentrated exposure to high humidity levels, extremely hot or cold temperatures, pulmonary irritants (i.e., dusts, fumes, odors, gases, and poor ventilation); and avoidance of exposure to workplace hazards such as unprotected heights or dangerous moving machinery.

R. 28. At the fourth step, the ALJ considered Dake's age, education, work experience, and RFC in determining that he was capable of performing his past relevant work as a transmission mechanic. R. 32. Additionally, the ALJ identified other jobs in the national economy that Dake could perform, including work as an

order puller, salvage laborer, and machine package sealer. R 33.  As a result, the ALJ concluded that Dake was not disabled within the meaning of the Social Security Act from August 31, 2021, through the date of the decision. R. 34.  Based on these findings, the ALJ denied Dake's application for benefits. R. 34.

## IV.  DISCUSSION

Dake argues that substantial evidence does not support the ALJ's RFC determination. Doc. 13 at 5–16.  In particular, he first contends that the ALJ improperly relied on isolated treatment records to conclude that his statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence in the record. Doc. 13 at 6–13.  Second, Dake argues the ALJ's discussion of his daily activities is erroneously selective and omits several of his reported limitations. Doc. 13 at 13–16.  For the following reasons, the court disagrees with each argument and finds that substantial evidence supports the ALJ's RFC determination.

An RFC determination is an assessment, based on all relevant evidence, of a claimant's ability to work despite his impairments. *Lewis*, 125 F.3d at 1440.  "There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, *i.e.*, where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*,

13

542 F. App'x 890, 891–92 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

When an ALJ discounts subjective testimony about a claimant's symptoms, he must articulate "explicit and adequate reasons" for doing so. *Wilson v. Barnhart*, 284 F. 3d 1219, 1225 (11th Cir. 2002). A reviewing court will not disturb an ALJ's credibility finding if it is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

### A.    Treatment Records

The court is not persuaded by Dake's argument that the ALJ did not view the record as a whole and instead relied on only a "snapshot" of treatment records that support his conclusion. *See* Doc. 13 at 6–8. To the contrary, the ALJ's determination provides a thorough discussion with supporting citations to treatment records including Dake's hospital visit, the results of various pulmonology tests, and several follow-up visits. R. 16–17, 18–20.

The ALJ balanced these treatment records and the medical evidence against Dake's subjective reports, and he articulated reasons for discounting some of Dake's subjective complaints. For example, the ALJ explained that during his November 2021 visit, Dake complained that the symptoms of his lung disease and pneumonia— such as coughing and shortness of breath—had worsened. R. 29. But the ALJ noted that the medical evidence at that same appointment showed no such symptoms upon

respiratory exam and the CT scan revealed resolved pneumonia. R. 29–30.

And after his review of the evidence in the record, the ALJ found that Dr. Whitney's and Dr. Reddy's opinions about Dake's RFC were persuasive because (1) they were consistent with medical evidence in the record, (2) they accounted for Dake's subjective reports about his limitations, and (3) there were no other opinions in the record from medically acceptable sources suggesting greater functional limitations. R. 31. The court finds that the ALJ adequately articulated the reasons for his RFC determination and identified the supporting evidence.

In his argument, Dake references the same treatment records as the ALJ but focuses on his own subjective reports of dyspnea, coughing, and functional limitations. *See* Doc. 13 at 7–12. But under a substantial-evidence standard of review, Dake "must do more than point to evidence in the record that supports h[is] position; []he must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017); *accord Preston v. Comm'r Soc. Sec. Admin.*, 748 F. App'x 268, 271 (11th Cir. 2018) ("[T]hat some evidence supports a disability determination does not cast doubt on the propriety of the ALJ's decision."). For this reason, Dake's identification of his own subjective complaints in the record does not convince the court the ALJ's determination lacks substantial evidence.

Dake's argument essentially asks the court to reweigh the evidence. But this

court must give great deference to the ALJ's findings of fact. *See Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). It is the court's job to review the agency's decision and determine whether its conclusion, as a whole, is supported by substantial evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995) (citing 42 U.S.C. § 405(g)). "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The court "will not decide facts anew, make credibility determinations, or reweigh the evidence." *Porto v. Acting Comm'r of Soc. Sec.*, 851 F. App'x 142, 145 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). Accordingly, the court finds that substantial evidence supports the ALJ's determination regarding Dake's RFC, and it will not disturb the ALJ's findings of fact.

**B.    Daily Activities**

Dake next argues that the ALJ improperly considered his reported daily activities by omitting several limitations on those daily activities. Doc. 13 at 13–16. The court finds the ALJ's consideration of Dake's daily activities to be both thorough and supported by substantial evidence. Doc. 13 at 15–16.

For example, Dake contends that the ALJ considered Dake's testimony at the hearing recounting daily activities such as walking to and from the mailbox, shopping in stores as needed, and sitting and watching television, but he did not consider the limitations Dake placed on similar activities. Doc. 13 at 13–14. The court finds this argument lacks merit, because the ALJ explicitly considered Dake's reports that he experienced "shortness of breath with basic everyday activities" and that he had problems with climbing stairs, tolerating exposure to fumes, and walking or standing for more than one hour. R. 29.

At any rate, it is unclear how any additional consideration of Dake's limitations in daily living would affect the ALJ's RFC determination. As the court previously mentioned, the ALJ found to be persuasive Dr. Reddy's opinion, based Dake's reports of his daily activities, that he should avoid hazards like unprotected heights and concentrated exposure to pulmonary irritants. R. 31. The ALJ incorporated related limitations into Dake's RFC as a result. *See* R. 28–32.

In sum, Dake's second argument again invites the court to reweigh the evidence or make credibility determinations, and the court cannot accept this invitation. *See Porto*, 851 F. App'x at 145. Ultimately, the burden of proving disability always rests with the claimant. *See* 20 C.F.R. § 404.1512; *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). Even if the court would have resolved certain disputed factual issues differently, the ALJ's decision must be

affirmed because it is supported by substantial evidence in the record as a whole. *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards.  Accordingly, the decision of the Commissioner is due to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on July 23, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE